COURT OF APPEALS OF VIRGINIA


Present:    Judges Annunziata, Felton and McClanahan
Argued at Alexandria, Virginia


DAMIEN BUDNICK
                                                        OPINION BY
v.        Record No. 1689-03-4                JUDGE WALTER S. FELTON, JR.
                                                        APRIL 20, 2004
CYNTHIA H. BUDNICK


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                 M. Langhorne Keith, Judge

            Robert L. Vaughn, Jr. (Glennon, Lubeley, Vaughn & Walker, LLP,
            on brief), for appellant.

            Mary Ellen Craig (Craig & Hirsch, P.C., on brief), for appellee.


        Damien Budnick (husband) appeals from the final divorce decree granting Cynthia H.

Budnick (wife) a divorce on the grounds of his felony conviction and subsequent incarceration.  On

appeal, husband contends that the trial court erred (1) in adopting the commissioner's conclusion

that husband's criminal activity was the primary factor in the dissolution of the marriage; (2) in its

equitable distribution of the marital property; (3) in its finding that husband committed substantial

waste of the parties' marital assets to pay the court-ordered restitution and other costs resulting from

his criminal convictions, and its awarding a lump sum payment of $20,018 to wife; (4) in its failure

to impute income to wife in setting child support; (5) in its reservation of a right to future spousal

support for wife; (6) in its award of child support retroactive to March 2002; and (7) in its award of

attorney's fees to wife.  We affirm the judgment of the trial court.

                                        BACKGROUND

        "'Under familiar principles we view [the] evidence and all reasonable inferences in the

light most favorable to the prevailing party below.  Where, as here, the court hears the evidence

*ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988) (quoting Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).

So viewed, the record establishes that Damien and Cynthia H. Budnick were married in September 1983. Two children were born of the marriage, both of whom were under eighteen years old at the time of the divorce. In 1994, while the parties were living in Florida, federal authorities charged husband with felony obstruction of justice for his role in a fraud and bribery scandal involving his former employment with American Honda Motors, Inc. He pleaded guilty and was sentenced to five months home detention and ordered to pay $20,000 in fines and $75,000 in restitution. In 1997, while husband was on probation from his prior conviction, federal authorities began an investigation of husband's boat loan business. When wife discovered that husband was the subject of this second criminal investigation, she separated from him, relocating with the parties' children to Virginia. A few months later husband followed wife to Virginia. The parties subsequently reconciled. Wife testified that following the reconciliation husband remained secretive, and thereafter became verbally and physically abusive.

In July 2001, husband was charged in the United States District Court in Florida with bank fraud and structuring transactions to evade bank reporting requirements. On learning of husband's charges in Florida, wife again separated from husband, though the parties continued to reside in the same house. In November 2001, wife initiated divorce proceedings on the grounds of husband's cruelty and constructive desertion. Husband remained in the residence in Fairfax County until March 2002, when he pleaded guilty to the Florida charges and was sentenced to a term of twenty-one months incarceration. As a result of his convictions, he was ordered to pay restitution in the amount of $395,007.85 to the Bank of America. Wife later amended her bill of complaint to

seek divorce on the grounds of husband's felony conviction and his incarceration for a period greater than one year.

The trial court referred the proceedings to a commissioner in chancery who heard evidence *ore tenus*. The commissioner reported that husband "was twice convicted of participating in fraudulent schemes which caused his family irreparable harm. On both occasions when [wife] was confronted with the fact that her husband was being prosecuted or investigated for criminal activity, the results were devastating." He concluded that the parties' marriage was "primarily destroyed by the criminal activities of [husband]." The commissioner recommended that wife be awarded a divorce on the ground of husband's 2002 convictions and his subsequent incarceration for a period of more than a year. Husband filed objections to the commissioner's findings.

In December 2002, following receipt of the commissioner's report, the trial court heard evidence *ore tenus* regarding child custody, equitable distribution, spousal support and child support. On April 7, 2003, it granted a divorce *a vinculo* to wife on the grounds of husband's felony convictions and incarceration. It adopted the commissioner's findings regarding the circumstances and factors leading to the dissolution of the marriage, including the impact of husband's criminal activities and convictions, as well as his abusive conduct toward wife. It concluded that after "[h]aving considered all the factors of Code § 20-107.3 and the value of the marital property, . . . that based on all the evidence in this case, including husband's negative monetary contributions to the marriage, a 90 percent/10 percent split of the marital assets is required."

In addition to awarding the substantial share of the marital property to wife, the trial court granted a monetary award of $20,018 to her, based on husband's waste of marital assets to pay court-ordered restitution and costs resulting from his criminal convictions. It awarded custody of the children to wife; a lump sum spousal support award of $6,000; reservation for future spousal

- 3 -

support for 20 years; and retroactive child support. Finally, the trial court awarded her attorney's fees incurred during the divorce proceedings.

## ANALYSIS

### I. FAILURE TO CITE AUTHORITY

Husband presents twenty questions on appeal. In questions 8, 10, 12, 13, 17, 18, and 20, husband fails to cite any supporting principles of law or authority. "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." Roberts v. Roberts, 41 Va. App. 513, 527, 586 S.E.2d 290, 297 (2003) (citation omitted); see Rule 5A:20 (requiring appellants to brief the "principles of law, the argument, and the authorities relating to each question presented").

Having presented no citations or authority in his brief in support of these questions, husband has waived these questions on appeal and we need not address them. See Rule 5A:20(e).

### II. COMMISSIONER'S REPORT

In questions 1 and 2, husband contends that the trial court erred in affirming the report of the commissioner, finding that husband's criminal actions and convictions had a devastating impact on the marriage.

"Although the report of a commissioner in chancery does not carry the weight of a jury's verdict," when the commissioner's findings of fact are based upon *ore tenus* evidence, we "give due regard to the commissioner's ability, not shared by the chancellor, to see, hear, and evaluate the witnesses at first hand." Gilman v. Gilman, 32 Va. App. 104, 115, 526 S.E.2d 763, 768 (2000) (quoting Jarvis v. Tonkin, 238 Va. 115, 121-22, 380 S.E.2d 900, 904 (1989)). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v.

<u>Commonwealth</u>, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).  On appeal, we will not reverse findings of fact "unless plainly wrong."  <u>Gilman</u>, 32 Va. App. at 115, 526 S.E.2d at 768-69 (citing <u>Barker v. Barker</u>, 27 Va. App. 519, 531, 500 S.E.2d 240, 245-46 (1998)).

The commissioner found that husband refused to accept responsibility for the consequences of his criminal activities, and particularly noted their impact on the well-being of the marriage.  He also found that these activities created such turmoil in wife's life that she became physically ill, lost weight, and required treatment for stress and depression.  The record reflects that, following husband's first conviction in 1995, wife suffered from stress and emotional trauma resulting from the widespread publicity surrounding the scandal.  She also testified that husband became more uncommunicative and abusive.  The commissioner found that husband's reluctance to accept responsibility for his unlawful behavior continued to undermine the marriage and wife's trust in him.

We conclude that the commissioner's findings are supported by evidence in the record, and hold that the trial court did not abuse its discretion in accepting, without modification, the findings contained in the commissioner's report.  See <u>Brown v. Brown</u>, 11 Va. App. 231, 236, 397 S.E.2d 545, 548 (1990).

## III.  EQUITABLE DISTRIBUTION

In questions 3, 4, 5, and 6, husband contends that the trial court erred in its equitable distribution of the marital property.  He argues that the trial court erred in concluding that his criminal conduct and subsequent convictions constituted negative nonmonetary contributions to the marriage; that the trial court improperly adopted the commissioner's finding that his conduct was the primary cause of the dissolution of the parties' marriage; that it impermissibly used fault as a factor in distributing the marital estate; and that it erred in granting most of the marital estate to

- 5 -

wife, and ordering him to pay a monetary award of $20,018 to wife on the basis of his waste of marital assets.

A. Husband's Negative Nonmonetary Contributions

Husband contends that the trial court erred in finding that his criminal activities and his resulting convictions constituted negative nonmonetary contributions to the marriage. It is well established that the trial court must consider each of the factors of Code § 20-107.3(E) in determining the division of marital property, as well as in making any monetary award. Barker, 27 Va. App. at 535, 500 S.E.2d at 248. The amount and form of any equitable distribution award "are matters committed to the sound discretion of the trial court." Id. When reviewing an equitable distribution award on appeal, we will not reverse the decision of the trial court "unless it is plainly wrong or without evidence to support it." Thomas v. Thomas, 40 Va. App. 639, 644, 580 S.E.2d 503, 505 (2003) (citing Gilman, 32 Va. App. at 115, 526 S.E.2d at 768).

Here, the record reflects that the trial court gave full consideration to the statutory requirements of Code § 20-107.3(E), including both husband's positive and negative monetary contributions, as well as his nonmonetary contributions. The evidence demonstrated that husband's negative conduct and repeated convictions created substantial stress and turmoil for wife and his children.

Initially, husband argues that the benefit of his monetary contributions substantially outweighed any detriment resulting from his nonmonetary contributions. However, a trial court is not required to weigh monetary contributions more heavily than nonmonetary contributions. See L.C.S. v. S.A.S., 19 Va. App. 709, 721, 453 S.E.2d 580, 586 (1995) (finding that while the husband's monetary contribution was overwhelmingly in his favor, that contribution must be considered together with wife's positive nonmonetary contributions and husband's negative nonmonetary contributions resulting from his criminal conduct).

Husband asserts that, at most, his nonmonetary contributions (his criminal business activities) resulted only in a two-month separation of the parties in 1997, and thus had a limited material impact on the marriage. We conclude that the evidence supports the trial court's finding that husband's criminal activities and convictions irreparably harmed the marriage.

This Court has held that "[c]onsideration of nonmonetary contributions to the well being of the family under Code § 20-107.3(E)(1) requires no showing of an adverse economic impact. In that context, the 'well-being' of the family relates to the effect on the family's emotional welfare and condition." Watts v. Watts, 40 Va. App. 685, 699, 581 S.E.2d 224, 231 (2003). Stated simply, Code § 20-107.3(E) does not require that the trial court find that the negative nonmonetary contribution resulted in a pecuniary impact on marital property when it considers how that spouse's conduct affected the well-being of the family for equitable distribution purposes. Id. at 698, 581 S.E.2d at 231; see Smith v. Smith, 18 Va. App. 427, 431, 444 S.E.2d 269, 273 (1994); see also O'Loughlin v. O'Loughlin, 20 Va. App. 522, 528, 458 S.E.2d 323, 326 (1995), aff'd upon reh'g en banc, 23 Va. App. 690, 479 S.E.2d 98 (1996).

Here, the record reflects that husband's negative nonmonetary contributions, his continuing criminal business activities, clearly impacted the "well-being of the family." See Code § 20-107.3(E)(1). Wife became physically ill and required counseling and antidepressants as a result of husband's conduct. His arrest in the family's kitchen by the FBI, in the presence of wife and the couple's children, left wife shaking and upset. When she learned of the second criminal investigation, she separated from husband and relocated with the children to Virginia. The trial court found that, despite wife's effort to remain in the marriage, and the attempts at reconciliation following their separation, husband's criminal conduct, abusive behavior and continued secretiveness in his business affairs undermined the trust and communication

necessary for the marital partnership. The record also reflects that the parties' youngest child suffered increased difficulties in school as a result of husband's convictions.

We conclude, from the record before us, that the trial court properly considered the statutory factors found in Code § 20-107.3(E) in making its equitable distribution award, including its consideration of husband's negative nonmonetary contributions, his criminal conduct and two subsequent convictions.

### B. Fault In Determining Equitable Distribution

Husband contends that the trial court improperly used fault, as a "wild card," to punish him in its equitable distribution award. See Theismann v. Theismann, 22 Va. App. 557, 569, 471 S.E.2d 809, 815, aff'd upon reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996); O'Loughlin, 20 Va. App. at 528, 458 S.E.2d at 326. While we concur that "equitable distribution is not a vehicle to punish behavior," we disagree with husband's contention that the trial court here improperly relied on fault in determining its equitable distribution award. See O'Loughlin , 20 Va. App. at 527, 458 S.E.2d at 325.

The trial court appropriately considered husband's criminal activities, the grounds on which the divorce was granted, as factors in its equitable distribution award. It adopted the findings contained in the commissioner's report, concluding that they were supported by credible evidence. "A commissioner's findings of fact which have been accepted by the trial court 'are presumed to be correct when reviewed on appeal and are to be given great weight by this Court.'" Barker, 27 Va. App. at 531, 500 S.E.2d at 245-46 (citation omitted). Here, the record supports the findings of the trial court that husband's criminal activities were devastating to the marriage and led to its dissolution.

We conclude that the trial court's division of the marital property did not impermissibly use husband's criminal conduct punitively in its equitable distribution award.

C. Amount of the Equitable Distribution Award

Husband contends that the trial court erred in granting to wife a disproportionate share of the marital property, and in granting to her a lump sum monetary award of $20,018. Equitable distribution does not mean equal distribution. In Virginia, there is no presumption that marital property should be equally divided. See Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 830-31 (1986); Code § 20-107. We will not disturb the trial court's equitable distribution award merely because it is unequal in value between the parties, where the record reflects that the trial court has considered each of the factors set out in Code § 20-107.3(E), and where the evidence supports the trial court's conclusions. Artis v. Artis, 10 Va. App. 356, 362, 392 S.E.2d 504, 508 (1990); see Booth v. Booth, 7 Va. App. 22, 28, 371 S.E.2d 569, 573 (1988). Moreover, Code § 20-107.3(E)(5) authorizes the trial court to consider a spouse's negative behavior in determining equitable distribution, and justifies an award that favors one spouse over the other, when that behavior adversely affects the marriage. Smith, 18 Va. App. at 431, 444 S.E.2d at 273.

Here, the trial court found that a separate monetary award to wife was appropriate considering the factors enumerated in Code § 20-107.3. It concluded that husband's criminal activity undermined trust in the marriage, created financial hardship, expended marital assets to pay the costs resulting from his convictions, and caused severe stress and emotional turmoil to wife. From our review of the record in this case, we conclude that the trial court did not err in allocating ninety percent of the marital estate to the wife and in awarding her a monetary payment of $20,018.

IV.  MARITAL WASTE

Husband contends, in his question 7, that the trial court erred in finding that he had committed substantial waste of marital assets by using marital funds to pay court-ordered fines, restitution, and related costs resulting from his two felony convictions.[1]

Generally, "[w]aste occurs 'where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown.'"  Thomas, 40 Va. App. at 644-45, 580 S.E.2d at 505 (quoting Smith, 18 Va. App. at 430, 444 S.E.2d at 272); see O'Loughlin, 20 Va. App. at 526, 458 S.E.2d at 325; Alphin v. Alphin, 15 Va. App. 395, 402, 424 S.E.2d 572, 576 (1992).  The use of marital funds for necessities of life, including, in some circumstances attorney's fees, constitutes a valid marital purpose and not marital waste.  Thomas, 40 Va. App. at 645, 580 S.E.2d at 505.  We have previously held that use of marital assets to pay attorney's fees to defend criminal charges against a spouse were used for a proper marital purpose, because had the spouse prevailed, "it clearly would have been of benefit to his family as his incarceration would not have so limited his ability to support the family."  L.C.S., 19 Va. App. at 720, 453 S.E.2d at 586.

Here, we distinguish between considerations in payment of costs to defend criminal charges in order to protect marital assets, from the financial costs resulting from criminal convictions that dissipate marital assets for purposes unrelated to the preservation and welfare of the marriage and the family.  In L.C.S., we found no abuse of discretion by the trial court in finding that the husband's expenditure of marital funds for his criminal defense was for a proper purpose.  Id. at 720, 453 S.E.2d at 586.  There, we approved the trial court's conclusion: "'[W]hether or not he succeeded [in his criminal case] did have an effect on the rights of the

_____

[1] Husband did not allege, nor does the record reflect, that wife knew of or participated in any way in husband's criminal activities.

- 10 -

family and for him to spend that [money] was his attempt to try to maintain his freedom and ability to earn.'" Id. at 719, 453 S.E.2d at 586. Here, husband was ordered to pay restitution to his victims and fines as a consequence of his convictions. As a result of his second conviction in 2002, when the marriage was irretrievably broken, he was ordered to pay $395,007.85 in restitution. See In re Marriage of Rodriguez, 969 P.2d 880 (Kan. 1998) (government seized substantial marital assets after husband convicted of selling drugs to undercover police agents; husband liable for dissipation).

Here, husband liquidated a life insurance policy and withdrew approximately $39,000 cash from his Individual Retirement Accounts (IRAs) to make payments toward the court-ordered restitution debt. Under Code § 20-107.3(2)(iii), property, including a retirement account, acquired during the marriage is "presumed to be marital property in the absence of satisfactory evidence that it is separate property." See Marion v. Marion, 11 Va. App. 659, 670, 401 S.E.2d 432, 439 (1991).

We conclude that the trial court did not err in finding that husband's use of marital funds withdrawn from his retirement account to pay fines and restitution to the victims of his criminal activities was a substantial waste of marital assets "in anticipation of divorce or separation for a purpose unrelated to the marriage, and in derogation of the marital relationship at a time when the marriage [was] in jeopardy." Booth, 7 Va. App. at 27, 371 S.E.2d at 572 (citation omitted). The trial court's monetary award to wife of $20,018 represents approximately one-half of the $39,000 husband withdrew from his retirement accounts for the non-marital purpose of paying costs resulting solely from his criminal convictions.

V. IMPUTING WIFE'S INCOME

Husband contends in his questions 9 and 19 that the trial court erred in refusing to impute $40,000 annual income to wife when it calculated husband's child support obligation. Husband

argues that wife's refusal to accept a job transfer to a different geographical area constituted voluntary unemployment and that the resulting loss of income should be imputed to wife at the salary she would have earned had she relocated. We disagree and find no error in the trial court's determination that wife's unemployment was not voluntary.

When determining an award of child support, "a court may impute income to a party who is voluntarily unemployed or underemployed." Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994). The trial court's decision whether to impute income rests within its sound discretion and will be reversed only if plainly wrong or not supported by credible evidence. Id.

The record reflects that wife's job with USAA Insurance Group (USAA) was eliminated in 2001 when USAA relocated its offices from Northern Virginia to Norfolk. The company offered her a position in the Norfolk office, which she declined. The trial court concluded that wife did not voluntarily choose to leave her job at USAA, finding instead that USAA eliminated her position when it closed its Northern Virginia office.

We have found "no authority for a *per se* rule which would hold that a supporting spouse always becomes voluntarily underemployed or unemployed when he or she refuses to accept an offer of comparable employment in another geographic location." Reece v. Reece, 22 Va. App. 368, 375, 470 S.E.2d 148, 151 (1996). Whether failure to relocate constitutes voluntary unemployment or underemployment, sufficient to justify imputing income, is a matter for a trial court to determine on the particular facts of the case before it. Id.

The trial court noted that USAA moved wife's job "out from under her" to Norfolk, at a time when the parties' children were already enrolled in school in Fairfax County. The parties' daughter was a senior in high school, and their son was enrolled in special education classes. Based

on the record before us, we conclude that the trial court did not abuse its discretion in finding that wife was not voluntarily unemployed and in refusing to impute income to her.

Husband also argues that wife's refusal to accept the transfer constituted waste, as her unemployment required her use of the parties' marital assets to pay for living expenses for herself and the parties' children.

This Court has previously held that the expenditure of marital funds for living expenses after separation and before divorce does not constitute waste. See Anderson v. Anderson, 29 Va. App. 673, 695, 514 S.E.2d 369, 381 (1999) (paying marital mortgage and marital credit card debt with marital funds did not constitute waste); Alphin, 15 Va. App. at 402, 424 S.E.2d at 576 (paying voluntary spousal support and medical bills for wife with marital funds did not constitute waste); Amburn v. Amburn, 13 Va. App. 661, 414 S.E.2d 844 (1992) (paying personal living expenses, attorney's fees, child's tuition, and car loans with marital funds was not waste).

The trial court accepted wife's testimony that her expenditure of marital funds was essential to pay for necessary living expenses for herself and the parties' children. We conclude that the trial court did not err in finding that wife did not commit waste of marital funds after she became unemployed.

## VI. RESERVATION OF SPOUSAL SUPPORT

Husband contends in his question 11 that the trial court erred when it granted to wife a reservation for future spousal support for a period of twenty years. He argues on appeal that Code § 20-107.3(D) creates a rebuttable presumption limiting a court's authority to reserve spousal support to a period equal to fifty percent of the length of time between the date of the marriage and the date of separation and that wife failed to rebut that presumption.

Husband failed to present any argument or evidence during the proceedings in the trial court contesting its reservation of spousal support in excess of the statutory presumption. He

never raised this argument in his motion to the trial court to reconsider its various judgments. While he noted this objection in his exceptions to the final decree after it was entered, he failed to specify any basis for his objection.

"The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); see Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of this question on appeal, and the record before us does not show any reason to invoke the good cause or ends of justice exceptions to the rule.

## VII.  RETROACTIVE CHILD SUPPORT

Husband contends in his question 14 that the trial court erred when it awarded child support retroactive to March 1, 2002. He raises this issue for the first time on appeal. He failed to present any argument or evidence at trial contesting the award of child support retroactively. He failed to object to the trial court's decision in his motion to reconsider the trial court's final rulings, or in his exceptions to the final decree. As a result, he has failed to preserve this issue for appeal. See Rule 5A:18. Furthermore, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

## VIII.  ATTORNEY'S FEES

Finally, we consider whether the trial court erred in awarding $20,000 in attorney's fees to wife. Husband argues that the trial court refused to permit him to put on evidence contesting the reasonableness of wife's claim for attorney's fees. He also contends that the trial court's refusal to hear his evidence as to the reasonableness of those fees was a violation of his fundamental right to due process.

## A. Award of Attorney's Fees

An award of attorney fees is within the sound discretion of the trial court, and we review the trial court's decision only for an abuse of discretion. Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). "[T]he key to a proper award of counsel fees [is] . . . reasonableness under all of the circumstances revealed by the record." McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985). The trial court must also "weigh the testimony of attorneys as to the value of the services, by reference to their nature, the time occupied in their performance, and other attending circumstances, and by applying to it their own experience and knowledge of the character of such services." Beale v. King, Administratrix, 204 Va. 443, 446, 132 S.E.2d 476, 478-79 (1963) (citing Maupin v. Maupin, 158 Va. 663, 672, 164 S. E. 557, 560 (1932)).

Here, the trial court concluded that, based on its "experience in equitable distribution cases" and "given the facts of this case," the award of $20,000 was reasonable. It had before it evidence as to the reasonableness of the fees in the form of an affidavit from wife's counsel, documenting the services rendered and costs incurred. Under these circumstances, the trial court found that an award for a portion of wife's attorney's fees, incurred in the divorce proceedings, was reasonable. We agree.

## B. Failure to Cross-Examine

Husband also contends that the trial court erred in refusing to permit him to cross-examine wife's counsel as to the reasonableness of her fees and costs. When wife offered into evidence an affidavit of her counsel's fees and costs at the December 11, 2002 hearing on equitable distribution, husband's only objection was "subject to cross examination." At no point during the lengthy presentation of the evidence to the trial court did the husband seek to cross-examine wife's attorney as to the reasonableness of her fees. His request to cross-examine

- 15 -

wife's counsel did not occur until after his closing argument on equitable distribution, and after the trial court announced its award of attorney's fees to wife. We conclude that his belated request to cross-examine wife's attorney was untimely, and find no error on the part of the trial court in refusing to permit him that opportunity after the presentation of the evidence had been concluded. See Chrisman v. Commonwealth, 3 Va. App. 371, 349 S.E.2d 899 (1986) (whether to permit a party to introduce additional evidence after it has rested is a matter of trial court's discretion which will not be overturned on appeal absent an abuse of that discretion).

### C. Due Process

Husband did not assert in the trial court that his constitutional rights of due process were violated. Accordingly, we will not consider that question for the first time on appeal, absent good cause or to meet the ends of justice. Rule 5A:18; see also Aviles v. Aviles, 14 Va. App. 360, 366-67, 416 S.E.2d 716, 718 (1992). Husband does not argue on appeal that any exception should be made to attain the ends of justice or for good cause shown, as required by Rule 5A:18, and we find no reason to waive the requirements of the rule. Accordingly, we will not consider those issues for the first time on appeal.

### CONCLUSION

For the above reasons, we conclude that the trial court did not err in adopting the commissioner's report; in its equitable distribution award, including a separate monetary award of $20,018 to wife; in its refusal to impute income to wife; or in its award of attorney's fees to wife. We will not consider husband's other issues on appeal because we conclude that they are procedurally barred. Accordingly, we affirm the judgment of the trial court.

Affirmed.

- 16 -